IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,398

STATE OF KANSAS,
*Appellant*,

v.

TYLER REGELMAN,
*Appellee.*


SYLLABUS BY THE COURT

1.

On a motion to suppress evidence, an appellate court reviews the factual findings underlying the trial court's suppression decision using a substantial competent evidence standard and the legal conclusion drawn from those factual findings using a de novo standard. The court does not reweigh evidence.


2.

The safeguards of *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, *reh. denied* 385 U.S. 890 (1966), are triggered only when an accused is (a) in custody and (b) subject to interrogation. Custodial interrogation is defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of freedom in any significant way. A custodial interrogation is distinguished from an investigatory interrogation, which occurs as a routine part of the fact-finding process before the investigation reaches the accusatory stage.

3.

Factors to consider in determining if an interrogation is investigative or custodial include: (a) the interrogation's time and place; (b) its duration; (c) the number of law enforcement officers present; (d) the conduct of the officer and the person questioned; (e) the presence or absence of actual physical restraint or its functional equivalent, such as drawn firearms or a stationed guard; (f) whether the person is being questioned as a suspect or a witness; (g) whether the person questioned was escorted by officers to the interrogation location or arrived under his or her own power; and (h) the interrogation's result, e.g., whether the person was allowed to leave, was detained further, or was arrested after the interrogation. No single factor outweighs another, nor do the factors bear equal weight. Every case must be analyzed on its own particular facts.

4.

An appellate court's review of a trial court's determination whether an interrogation was custodial has two distinct inquiries. Under the first, the appellate court determines the circumstances surrounding the interrogation, employing a substantial competent evidence standard of review. In determining if there is substantial competent evidence supporting the existence of the circumstances found by the trial court, an appellate court does not reweigh evidence, assess the credibility of the witnesses, or resolve conflicting evidence. The second inquiry employs a de novo standard of review to determine whether, under the totality of those circumstances, a reasonable person would have felt free to terminate the interrogation and disengage from the encounter.

5.

When an affidavit supporting a search warrant contains both lawfully and unlawfully obtained information, a reviewing court asks whether the affidavit supplied a substantial basis for finding probable cause without the unlawfully obtained information. If a substantial basis nonetheless existed for finding probable cause, the warrant was valid and evidence obtained pursuant to it will not be suppressed.

6.

Probable cause to support a search can be established if the totality of the circumstances indicates there is a fair probability the place to be searched contains contraband or evidence of a crime.

7.

The totality of the circumstances surrounding a law enforcement officer's detection of the smell of raw marijuana emanating from a residence can supply probable cause to believe the residence contains contraband or evidence of a crime. Such circumstances include, but are not limited to, proximity to the odor's source, reported strength of the odor, experience identifying the odor, elimination of other possible sources of the odor, and the number of witnesses testifying to the odor's presence. This is a case-by-case determination based on the circumstances. Not all cases relying on odor will have the same result.

8.

When reviewing a judge's finding of probable cause to issue a search warrant, the correct standard of review is more deferential to the issuing judge than the standard applied when reviewing a judge's conclusion that probable cause was sufficient to support an exception to the Fourth Amendment's warrant requirement. More specifically, the standard is whether the evidence provided the issuing judge with a substantial basis for determining that probable cause existed.

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 31, 2017. Appeal from Geary District Court; STEVEN L. HORNBAKER, judge. Opinion filed December 7, 2018. Judgment of the Court of Appeals affirming the district court is affirmed in part and reversed in part. Judgment of the district court is affirmed in part and reversed in part, and the case is remanded for further proceedings.

*Tony Cruz*, assistant county attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the briefs for appellant.

*Amber Cabrera*, assistant public defender, of North Central Regional Public Defender's Office, of Junction City, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: The State appeals a district court's order suppressing drug-related evidence seized during a residential search supported by a warrant. The Court of Appeals affirmed the suppression order. *State v. Regelman*, No. 116,398, 2017 WL 1197135, at *6 (Kan. App. 2017) (unpublished opinion). We consider: (1) whether *Miranda* warnings were required before the defendant made incriminating statements used to support the warrant; and (2) whether the officer's testimony that he detected the smell of raw marijuana coming from the residence supported the probable cause for the search warrant. We affirm in part, reverse in part, and remand the case to the district court for further proceedings.

We agree with the lower courts that *Miranda* warnings were required under the circumstances presented, so the incriminating statements were properly suppressed since the warnings were not given before the statements were made. But we disagree with the lower courts about the smell of raw marijuana failing to provide probable cause under the case's facts. See *State v. Hubbard*, 308 Kan. ___, ___ P.3d ___ (No. 113,888, this day decided), slip op. at 24 (holding the totality of the circumstances surrounding a police officer's detection of the smell of raw marijuana emanating from a residence can supply probable cause to believe the residence contains contraband or evidence of a crime).

4

Junction City police officers visited Tyler Regelman's home to conduct a welfare check after his employer reported him missing. Officer Douglas Cathey later testified he could smell raw marijuana while standing at the front door waiting for Regelman to answer after the officer rang the doorbell. When Regelman opened the front door, Cathey testified the marijuana smell became stronger.

Cathey asked questions related to the wellness check and then almost immediately inquired about the marijuana odor. Regelman denied smelling anything and refused to allow the officers inside the house. Cathey then replied, "Okay. Well, what we are going to do is, I'm going to apply for a search warrant." Regelman acknowledged this. The officer then said, "[I]n the meantime, we're just going to hang out here." Regelman replied, "[I] don't smoke, so I'm going to leave."

Regelman began to walk down the porch steps and away from the house, toward the street. Cathey instructed: "Mr. Regelman stop walking." Regelman complied, turned around, and repeated, "I don't smoke or anything." Cathey then told Regelman, "Okay, you can either sit on the steps or sit in my patrol car. Which one do you want to do?" Regelman asked to return inside his house, but Cathey told him, "No you may not." This all occurred less than a minute after Regelman answered the door.

After some additional back and forth, Regelman said, "I'm not hurting anybody but myself." Cathey asked what he meant. An audio recording reflects the following exchange:

"[Regelman]: I mean, I've got a problem. I know I've got a problem. I'm not trying to hide it or anything.

5

"[Officer Cathey]: What's your problem?

"[Regelman]: I do drugs. I'm not trying to hide it.

"[Officer Cathey]: Okay. Just marijuana or do you do anything worse?

"[Regelman]: That's it, man. I'm not trying to hurt anybody but . . . I mean the only person I'm hurting is myself."

Cathey then told Regelman he needed to be handcuffed as a precautionary measure after Regelman kept trying to put his hands in his pockets. Cathey handcuffed Regelman about two minutes into the exchange.

About a minute after being handcuffed, Regelman said, "Can we please not do this, man . . . . Just give me a chance. . . . I'll get rid of everything." Approximately four minutes after being handcuffed, Regelman said, "You guys can just go in the house. It's next to the couch." Cathey responded that they could no longer do a consent search because Regelman was in handcuffs, so they would wait for the warrant. Cathey left the scene to ask a judge for a search warrant.

In his affidavit supporting the search warrant application, Cathey summarized Regelman's statements on the porch as: "Mr. Regelman repeatedly begged me to cut him a break and advised he had a drug problem. Mr. Regelman also told me I should just take him to jail and that 'The stuff' was all sitting by the couch and that he would show it to me." The officer also described noticing the marijuana smell, stating:

"Upon my arrival, I rang the front door bell. While waiting for an answer, I smelled a strong odor of what I believed, based on my training and experience, to be raw

6

marijuana. A moment later a white male, who identified himself as Mr. Regelman answered the door. He stepped out onto the porch and closed the door behind him. When he stepped out of the house, the odor of marijuana grew even stronger. I note[d] Mr. Reglema[n]'s eyes were very bloodshot. I know this to be a common indication o[f] marijuana use."

A judge granted the search warrant for Regelman's residence. Cathey executed it, finding about 1 ounce of marijuana, various pipes, and a scale. A majority of the drug-related items were inside an inch-thick wooden box next to the couch, which was several feet from the front door. For the first time, Cathey read Regelman his *Miranda* rights.

Regelman was charged with possession of marijuana with intent to distribute within 1,000 feet of a school zone, a severity level 3 nonperson drug felony; possession of drug paraphernalia, a severity level 5 nonperson drug felony; possession of marijuana, a class A nonperson misdemeanor; and possession of drug paraphernalia, a class A nonperson misdemeanor.

Regelman filed a motion to suppress the evidence from the search. Cathey testified for the State at a suppression hearing. The court admitted into evidence the body camera audio/video recording, the search warrant, and Cathey's affidavit. The district court granted the motion to suppress.

The district court first concluded Regelman's statements about drug use occurred while he was unlawfully detained and under circumstances in which *Miranda* warnings should have been given. The district court ruled the questioning violated "*Miranda* because Mr. Regelman was not given the warnings even though he was detained for close to an hour." Second, the court relied on *State v. Huff*, 278 Kan. 214, 221-22, 92 P.3d 604 (2004), which it read to hold that the smell of marijuana by itself does not provide

7

probable cause for a search. Finally, the court ruled the good-faith exception to the exclusionary rule did not apply because a well-trained officer should know the smell of marijuana alone was insufficient to find probable cause. The State filed an interlocutory appeal.

The Court of Appeals affirmed. In doing so, the panel agreed with the State that investigatory detentions—*Terry* stops—are not subject to *Miranda* protections. *Regelman*, 2017 WL 1197135, at *3 (citing *State v. Lewis*, 299 Kan. 828, 834-35, 326 P.3d 387 [2014] [A custodial interrogation is distinguished from an investigatory interrogation, which occurs as a routine part of the fact-finding process before the investigation reaches the accusatory stage.]). Then, after expressing a rule that "[d]uring a *Terry* stop, a person is not free to terminate the encounter but nevertheless is not in custody," the panel applied the custody analysis from this court's Fifth Amendment caselaw to conclude Regelman's "continued detention exceeded the limits of investigatory detention and became custodial." 2017 WL 1197135, at *3-4.

After reaching that conclusion, the panel returned to Fourth Amendment caselaw, rejecting the State's argument that the detention was reasonable under *Illinois v. McArthur*, 531 U.S. 326, 329, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001) (holding warrantless, temporary seizure of house, accomplished by excluding homeowner from reentering, was reasonable when officers possessed probable cause for the warrant; there was cause to believe evidence would be destroyed if resident permitted to reenter; exclusion was limited to time reasonably necessary to get warrant; and officers reasonably attempted to balance law enforcement needs with homeowner's interest by tailoring the seizure to the circumstances). 2017 WL 1197135, at *5.

The panel further held marijuana odor alone was insufficient to support probable cause for a search warrant. *Regelman*, 2017 WL 1197135, at *5-6. Finally, the panel held

8

the good-faith exception did not apply because the officer should have known the search warrant lacked probable cause and that Regelman was in custody and should have been given *Miranda* warnings. *Regelman*, 2017 WL 1197135, at \*6.

This court granted the State's petition for review. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

STANDARD OF REVIEW

Faced with a motion to suppress evidence, the State bears the burden of proving the search and seizure were lawful. K.S.A. 22-3216(2); *State v. Gray*, 306 Kan. 1287, 1302, 403 P.3d 1220 (2017). As to the trial court's suppression order,

> "'an appellate court reviews the factual underpinnings of the decision under a substantial competent evidence standard. The ultimate legal conclusion drawn from those facts is reviewed de novo. . . . Substantial evidence refers to evidence that a reasonable person could accept as being adequate to support a conclusion. . . . This court does not reweigh the evidence, assess the credibility of the witnesses, or resolve evidentiary conflicts. [Citations omitted.]' *State v. Mattox*, 305 Kan. 1015, 1035, 390 P.3d 514 (2017)." *State v. Brown*, 306 Kan. 1145, 1151, 401 P.3d 611 (2017).

STATEMENTS ABOUT DRUG USE

The State argues the panel erred because the officers had "legal authority to conduct an investigatory detention"; that they could detain Regelman until the investigation was complete; and that the use of handcuffs did not escalate the encounter into *Miranda* custody. And in its supplemental brief, the State explicitly contends "[i]nvestigative detentions are not subject to *Miranda* protections."

9

The question is whether the affidavit's statements about drug use were illegally obtained and should be extracted from the search warrant application. We can resolve that based on a conclusion that Regelman was in *Miranda* custody. This makes it unnecessary to engage in a Fourth Amendment analysis about whether the seizure of Regelman was reasonable at the points when the incriminating statements were made. In other words, because the Fourth and Fifth Amendment analyses are distinct paths to excluding the statements, a decision unfavorable to the State on the Fifth Amendment issue renders the Fourth Amendment issue moot. See *United States v. Kim*, 292 F.3d 969, 976 (9th Cir. 2002) ("[W]hether an individual . . . has been unreasonably seized for Fourth Amendment purposes and whether that individual is 'in custody' for *Miranda* purposes are two different issues."). We choose to take the Fifth Amendment route to affirm the district court on the suppression of Regelman's statements. We express no opinion on the encounter's Fourth Amendment status.

Under the Fifth Amendment, statements stemming from custodial interrogation must be excluded unless the State demonstrates it used procedural safeguards, i.e., *Miranda* warnings, to secure the defendant's privilege against self-incrimination. *State v. Schultz*, 289 Kan. 334, 340, 212 P.3d 150 (2009). "The *Miranda* safeguards are triggered only when an accused is (1) in custody and (2) subject to interrogation." *State v. Lewis*, 299 Kan. 828, 834, 326 P.3d 387 (2014). "A custodial interrogation is defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom in any significant way." *Lewis*, 299 Kan. at 834. A custodial interrogation is distinguished from an investigatory interrogation, which occurs as a routine part of the fact-finding process before the investigation reaches the accusatory stage.

10

Factors to consider in determining if an interrogation is investigative or custodial include: (1) the interrogation's time and place; (2) its duration; (3) the number of law enforcement officers present; (4) the conduct of the officer and the person questioned; (5) the presence or absence of actual physical restraint or its functional equivalent, such as drawn firearms or a stationed guard; (6) whether the person is being questioned as a suspect or a witness; (7) whether the person questioned was escorted by officers to the interrogation location or arrived under his or her own power; and (8) the interrogation's result, e.g., whether the person was allowed to leave, was detained further, or was arrested after the interrogation. No single factor outweighs another, nor do the factors bear equal weight. Every situation must be analyzed on its own particular facts. 299 Kan. at 835.

In Regelman's case, the district court determined the questioning turned custodial, and the panel agreed. We review this issue employing two distinct inquiries. First, we decide if there is substantial competent evidence supporting the existence of the circumstances found by the district court to support that determination. In doing so, we do not reweigh evidence, assess the credibility of the witnesses, or resolve conflicting evidence. Our second inquiry employs a de novo standard of review to determine whether, under the totality of those circumstances, a reasonable person would have felt free to terminate the interrogation and disengage from the encounter. 299 Kan. at 835. There are no substantive facts in dispute, so we move to de novo review.

We agree with the district court that Regelman's questioning turned into a custodial interrogation requiring *Miranda* warnings. And we agree with the panel that this occurred when Cathey told Regelman to stop walking and either sit on the steps or sit in the patrol car. As the panel correctly observed:

"Applying the [eight] factors to these circumstances, we note that Regelman was clearly considered a suspect, rather than a witness, and although he was not yet handcuffed or at a police station under a formal arrest, he was subjected to the functional equivalent of physical restraint since he had been denied freedom of movement and was ordered to return to his porch. Regelman was not free to leave, and he was not allowed to reenter his residence. The officers had imposed a restraint on Regelman's freedom of movement to a degree associated with a formal arrest. In that situation, a reasonable person would not have felt he or she was at liberty to terminate the interview and leave. The subjective application of that objective test was that Regelman *actually* tried to terminate the interview and leave and was prevented from doing so. Faced with an order supported by two officers, he complied. He was in custody." 2017 WL 1197135, at *4.

Accordingly, the affidavit contained unlawfully obtained information regarding what Regelman told the officer about his drug use and the drugs inside the residence.

But this holding does not necessarily render the affidavit as a whole invalid because when an affidavit contains both lawfully and unlawfully obtained information, the court asks whether the affidavit supplied a substantial basis for finding probable cause without the unlawfully obtained information. *State v. Fisher*, 283 Kan. 272, 302-03, 154 P.3d 455 (2007). If a substantial basis nonetheless existed for finding probable cause, the warrant was valid and evidence obtained pursuant to it will not be suppressed. See 283 Kan. at 309. We consider next whether the smell of marijuana as recited by Cathey in the search warrant application, coupled with his references to his training and experience and his observation of Regelman's bloodshot eyes, supplied the probable cause for the warrant.

12

This court has provided the following definition for probable cause:

"'Probable cause is the reasonable belief that a specific crime has been committed and that the defendant committed the crime. Probable cause exists where the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.

"'When determining whether probable cause exists, an appellate court considers the totality of the circumstances, including all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt.'" *State v. Ramirez*, 278 Kan. 402, 406, 100 P.3d 94 (2004) (quoting *State v. Abbott*, 277 Kan. 161, Syl. ¶¶ 2-3, 83 P.3d 794 [2004]).

Cast more pointedly in terms of probable cause for a search, probable cause "can be established if the totality of the circumstances indicates there is a fair probability that the place to be searched contains contraband or evidence of a crime." *State v. Sanchez-Loredo*, 294 Kan. 50, Syl. ¶ 2, 272 P.3d 34 (2012) (warrantless vehicle search); see also *Hicks*, 282 Kan. at 603 (noting magistrate judge considering whether to issue search warrant charged with making "'"a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . , including the 'veracity' and 'basis of knowledge' of [any] persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place"'") (quoting *State v. Gilbert*, 256 Kan. 419, 421, 886 P.2d 365 [1994]).

In *State v. Hubbard*, 308 Kan. at ___, this court held the totality of the circumstances surrounding a police officer's detection of the smell of raw marijuana

emanating from a residence can provide probable cause to believe the residence contains contraband or evidence of a crime. Slip op. at 24. We explained:

> "Such circumstances include, but are not limited to, proximity to the odor's source, reported strength of the odor, experience identifying the odor, elimination of other possible sources of the odor, and the number of witnesses testifying to the odor's presence. This is ultimately a case-by-case determination based on the circumstances. Not all cases relying on odor will have the same result." Slip op. at 24.

In Regelman's case, the district court erred when it held as a matter of law that "the smell of marijuana alone is insufficient to provide a probable cause determination under Kansas law." The question is more complicated as we explained in *Hubbard*. The district court approached the issue as a de novo legal question. Notably, the district court opined, "Kansas law should require more than the mere smell of marijuana because Kansas law does not criminalize the use of marijuana, only the possession of the drug." But that view does not reflect the law, as noted in *Hubbard*. The district court applied the wrong standard.

In Regelman's case, after excising the drug use admissions, the remaining affidavit facts demonstrate that: (1) while conducting a wellness check at Regelman's home after he was reported absent from work and not answering his phone; (2) a law enforcement officer smelled "a strong odor" of what he believed, based on his training and experience, to be raw marijuana; (3) when Regelman opened the front door to answer and stepped out onto the porch, "the odor of marijuana grew even stronger"; (4) Regelman's eyes were "very bloodshot," which the officer knew to be a common indication of marijuana use; and (5) possession of marijuana is illegal.

In reviewing whether this would be enough for the judge to issue the search warrant, the specific—and narrower—legal question is reviewed under a more deferential

14

standard. And that standard is whether the evidence provided the issuing judge "with a substantial basis for determining that probable cause existed." *Fisher*, 283 Kan. at 300. We need only see enough in the affidavit to persuade us that there was a substantial basis for the issuing judge's conclusion. 283 Kan. at 301 (quoting *State v. Hicks*, 282 Kan. 599, 613, 147 P.3d 1076 [2006]).

In *Fisher*, we explained our review under this circumstance "is less rigorous than the de novo standard of review of reasonable suspicion and probable cause determinations underlying warrantless searches . . . to provide law enforcement an incentive to seek warrants." 283 Kan. at 301. Put another way, the *Hicks* court stated:

> "When an affidavit in support of an application for search warrant is challenged, the task of the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed. This standard is inherently deferential. It does not demand that the reviewing court determine whether, as a matter of law, probable cause existed; rather, the standard translates to whether the affidavit provided substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched." *Hicks*, 282 Kan. 599, Syl. ¶ 2.

The dissent contends suppression was warranted because "[t]he State's only evidence to establish probable cause . . . was Officer Cathey's testimony that he smelled the odor of raw marijuana, while standing on Regelman's porch" and that the State should have supplied "foundation for that testimony by establishing that the officer was in a position that would rationally allow him to perceive the odor." Slip op. at 18. The dissent's focus on testimony at the suppression hearing is puzzling because admissibility of the evidence uncovered in the search turns on whether the magistrate's pre-warrant probable cause determination should stand, absent the illegally obtained evidence. It does not turn on whether suppression hearing testimony established probable cause.

15

What's more, the officer's affidavit statements were more detailed than simply that he smelled raw marijuana while standing on Regelman's porch. The affidavit made clear the officer was trained and experienced in detecting marijuana odor; that the officer was standing at the front door and smelled "a strong odor" of what he believed was raw marijuana before the front door was opened; that the odor was "even stronger" after Regelman opened the front door; that Regelman's eyes were very bloodshot, which the officer knew to be a common indication of marijuana use and was contemporaneous in time and consistent with the officer's noticing the strong marijuana smell; and that marijuana possession is illegal.

We hold these affidavit facts provided a substantial basis for the issuing judge's determination that there was a fair probability that evidence of a crime, i.e., illegal marijuana possession, would be found in the home.

Framed in the language of *Fisher*, even without the drug-use statements, the information remaining in the affidavit allowed the issuing judge to make "a practical, common-sense decision whether a crime has been committed and whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Fisher*, 283 Kan. 272, Syl. ¶ 12.

We reverse the district court's holding in this regard and remand the case to the district court for further proceedings.

Affirmed in part, reversed in part, and remanded.

16

\* \* \*

BEIER, J., concurring in the result:  I concur in the result reached by today's majority in this case, because defendant Tyler Regelman made no effort to challenge the admission of the testimony of the law enforcement officer at the suppression hearing on the basis that he was not qualified to give an expert opinion on the existence or strength of the odor of raw marijuana. It is clear that the officer relied on his law enforcement training, as well as his experience in detecting the odor of raw marijuana in other cases, to arrive at his opinion on the presence of the odor in this case. Indeed, the majority also relies upon that training and experience to reverse and remand.

In my view, the officer was not only giving an opinion but also testifying as an expert, and thus the district court should have acted as a gatekeeper on the admission of this critically important evidence, as provided in K.S.A. 2017 Supp. 60-456(b). See *State v. Hubbard*, 308 Kan. ___, ___ P.3d ___ (No. 113,888 this day decided) (Beier, J., dissenting), slip op. at 35-36. I cannot concur in the rationale of the majority, which turns a blind eye to the essential missed step before admission, accepting the officer's expert opinion testimony as an unquestionable fact that can, as a matter of law, assist in leading to the establishment of probable cause under the totality of the circumstances.

\* \* \*

JOHNSON, J., dissenting:  I agree with Justice Beier's criticism of the majority's rationale, but I cannot join her in concurring with the majority's result. I would simply affirm the district court's suppression of the evidence.

Granted, as Justice Beier points out, Regelman did not explicitly challenge Officer Cathey's qualifications to deliver an expert opinion on the presence of the odor of raw

17

marijuana, as did the defendant in *State v. Hubbard*, 308 Kan. ___, ___ P.3d ___ (No. 113,888, this day decided), slip op. at 8. *Hubbard* cited to an article from the Smell and Taste Center, University of Pennsylvania School of Medicine: Doty et al., *Marijuana Odor Perception: Studies Modeled From Probable Cause Cases*, 28 Law and Human Behavior 223 (2004). The studies described in that article cast doubt on a human's ability to smell raw marijuana under the circumstances commonly presented in criminal cases involving probable cause determinations. In another context, we have refused to allow an officer's extensive training and experience to trump reliability. *City of Wichita v. Molitor*, 301 Kan. 251, 263-64, 341 P.3d 1275 (2015), held that a law enforcement officer's testimony relating the results of a horizontal gaze nystagmus (HGN) field sobriety test, administered to determine the level of intoxication of a driving under the influence suspect, was inadmissible evidence until the State could establish that the test produces reliably accurate results. We should require no less proof of reliability for the human detection of the odor of raw marijuana.

But even without considering the implications of the law regarding admission of expert opinion testimony, the district court's suppression was justified in this case. The State had the burden to establish probable cause that a crime was being committed inside Regelman's house and that a search of the house would produce evidence of that crime. The State's only evidence to establish probable cause—after excising the unconstitutionally obtained evidence—was Officer Cathey's testimony that he smelled the odor of raw marijuana, while standing on Regelman's porch. It was incumbent upon the State to lay the foundation for that testimony by establishing that the officer was in a position that would rationally allow him to perceive the odor. Cf. K.S.A. 2017 Supp. 60-456(a) (to admit lay opinion, judge must find it is "rationally based on the perception of the witness").

18

Yet, the search of the residence revealed only 1 ounce of raw marijuana, in an inch-thick box, located beside a couch several feet from the porch. Such a long-range detection of the odor of raw marijuana in a closed container at least raises a question as to the rationality of the perception. While a person entering a house party where the attendees are smoking cigarettes will immediately perceive the smell of smoke, that same person entering a nonsmoking party is unlikely to perceive the smell of an open pack of cigarettes in an attendee's purse, regardless of the person's familiarity with that odor. Moreover, we have opined that an officer's sensory perceptions are inherently subjective and imprecise, as well as subject to confirmation bias. *Molitor*, 301 Kan. at 267. Consequently, the district court was justified in finding that, in this case, the officer's belief that he smelled the odor of raw marijuana was insufficient, standing alone, to establish probable cause.

ROSEN, J., joins in the foregoing dissenting opinion.