NOT DESIGNATED FOR PUBLICATION

No. 120,951

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GARRETT LEE ROGERS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Kiowa District Court; SIDNEY R. THOMAS, judge. Opinion filed January 31, 2020. Affirmed.

*Razmi M. Tahirkheli*, of Tahirkheli & Premer-Chavez Law Office, L.L.C., of Liberal, for appellant.

*Chay Howard*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., POWELL, J., and LAHEY, S.J.

PER CURIAM: Garrett Lee Rogers appeals his convictions for possession of marijuana, possession of drug paraphernalia, and speeding. He claims the district court erred in denying his motion to suppress, arguing that law enforcement lacked reasonable suspicion to detain him and lacked probable cause to search his car. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are taken from the suppression hearing.

On the evening of December 22, 2017, Undersheriff Scott McCann was on patrol, and his radar registered Rogers driving 74 miles per hour in a 65-miles-per-hour zone. Upon approaching the car, McCann asked Rogers for his driver's license and proof of insurance, which Rogers provided. McCann took the documents to his patrol car and provided the information to dispatch. After determining that Rogers did not have any warrants, McCann decided to issue Rogers a verbal warning for speeding.

McCann returned Rogers' driver's license and insurance card and asked him to watch his speed and to have a safe trip. As McCann took a step back, Rogers told McCann a deputy had scared him earlier when he pulled over to use the restroom and asked if that was the reason McCann had stopped him. McCann told him that he did not recognize the car and just stopped Rogers because he was speeding.

As Rogers talked, McCann noticed Rogers' eyes were very bloodshot and glassy, and his pupils were much larger than normal. Rogers' speech was slow, and he mumbled and sometimes stumbled over words. During the conversation, McCann detected a very faint odor of marijuana coming from the car. McCann also believed Rogers' level of nervousness exceeded the normal degree of nervousness seen during traffic stops. McCann asked Rogers if he had been smoking or drinking. Rogers' voice choked up in response, and he answered, "[N]o, Sir."

At that time, Rogers asked if he was free to leave. McCann informed Rogers of the indicators he was observing and asked for consent to search Rogers' car. Rogers refused. McCann then told Rogers he was going to call for a K-9 unit to perform a dog sniff of Rogers' car. Rogers asked McCann if he was going to jail, and McCann asked Rogers if

there was something in the car. Rogers admitted to having marijuana in his car and asked if he could retrieve it for McCann. Rogers reached under the driver's seat and pulled up a Ziploc baggy with some loose marijuana and three rolled marijuana cigarettes.

At this point, Sheriff's Deputy Tyler Finch arrived at the stop. Rogers admitted to McCann that he last smoked marijuana before departing Liberal on this trip. McCann arrested Rogers for possession of marijuana and brought Rogers to the back of his car. Responding to McCann's questions, Rogers told the officers that there might be some empty baggies in the car but no marijuana. When the officers started to search Rogers, Rogers indicated that he had additional marijuana on his person. Rogers reached into his pants and removed a plastic wrapper containing marijuana. Rogers passed the field sobriety tests performed by Finch. Following Rogers' arrest, McCann searched Rogers' car and found some empty baggies, wrench sockets containing marijuana, and a marijuana grinder.

The State charged Rogers with possession of marijuana, possession of drug paraphernalia, and speeding. Rogers filed a motion to suppress, alleging McCann lacked reasonable suspicion to continue the stop and lacked probable cause to search Rogers' car.

The district court found that Rogers reengaged in conversation with McCann, turning the encounter and conversation into a consensual one. The district court credited McCann's testimony and found reasonable suspicion existed by the time Rogers asked if he was free to leave. The district court also found Rogers voluntarily admitted to possessing marijuana. Finally, the district court found probable cause to search existed because Rogers admitted there were additional empty baggies in the car. The district court denied Rogers' motion to suppress.

The State and Rogers filed a joint motion asking the district court to determine guilt based on the evidence presented at the suppression hearing. In conjunction with that motion, Rogers renewed his motion to suppress. The district court found Rogers guilty and sentenced him to one year of probation.

Rogers timely appeals.

DID THE DISTRICT COURT ERR BY DENYING ROGERS' MOTION TO SUPPRESS?

Rogers argues McCann unreasonably prolonged the traffic stop and the officers lacked probable cause to search his car.

We apply a bifurcated standard of review on a motion to suppress.

> "The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. But the court's ultimate legal conclusion is reviewed using a de novo standard. The appellate court does not reweigh the evidence or assess the credibility of witnesses. When the facts supporting the district court's decision on a motion to suppress are not disputed, the ultimate question of whether to suppress is a question of law over which the appellate court exercises unlimited review. [Citations omitted.]" *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018).

The State bears the burden of proving the lawfulness of a search and seizure. *State v. Schooler*, 308 Kan. 333, 344, 419 P.3d 1164 (2018).

A.  *Reasonable suspicion to extend Rogers' detention*

The Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights provide identical protection against unreasonable searches and

4

seizures. *State v. Johnson*, 253 Kan. 356, 362, 856 P.2d 134 (1993). A traffic stop is treated as an investigative detention rather than a custodial arrest. *State v. Jimenez*, 308 Kan. 315, 323, 420 P.3d 464 (2018). An investigatory detention is "constitutionally permissible if an objective officer would have a reasonable and articulable suspicion that the detainee committed, is about to commit, or is committing a crime." *Hanke*, 307 Kan. at 828.

"Reasonable suspicion is '"'a particularized and objective basis' for suspecting the person stopped of criminal activity.'"' 'Something more than an unparticularized suspicion or hunch must be articulated.' It is a lower standard than probable cause. 'What is reasonable depends on the totality of circumstances in the view of a trained law enforcement officer.' The totality of the circumstances standard 'allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them.' A reviewing court must give 'due weight' to the factual inferences drawn by both the district court and law enforcement officers. [Citations omitted.]" *Schooler*, 308 Kan. at 352.

Rogers does not challenge the lawfulness of the initial stop. His appeal only concerns whether the stop transformed into an illegal seizure. Whether a lawful traffic stop becomes an illegal seizure depends on if the officer "measurably extended the stop without reasonable suspicion of other criminal activity." 308 Kan. at 344.

The "tolerable duration of police inquiries" during a traffic stop is determined by the seizure's purpose—"to address the traffic violation that warranted the stop and to attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354, 135 S. Ct. 1609, 191 L. Ed. 2d 492 (2015). A stop cannot last longer than is necessary to address the infraction, and "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." 575 U.S. at 354. A stop that extends beyond that time becomes unlawful. See 575 U.S. at 354-55.

When conducting a routine traffic stop, law enforcement officers "may request a driver's license and vehicle registration, run a computer check, and issue a citation." *State v. Mitchell*, 265 Kan. 238, 245, 960 P.2d 200 (1998). Once those tasks are completed, an officer must allow the driver to proceed on his or her way, without being further delayed by additional questioning. 265 Kan. at 245. To justify the continuation of the stop, either "'"(1) 'the encounter between the officer and the driver ceases to be a detention, but becomes consensual, and the driver voluntarily consents to additional questioning,' or (2) during the traffic stop the officer gains a reasonable and articulable suspicion that the driver is engaged in illegal activity.'" [Citations omitted.]" *State v. Thompson*, 284 Kan. 763, 775, 166 P.3d 1015 (2007).

After returning Rogers' driver's license and proof of insurance, McCann told Rogers to watch his speed and have a safe trip. McCann then took a step backward to return to his patrol car, ending the stop. Almost immediately, Rogers asked McCann why McCann stopped him. Because the purpose of the initial stop was over, the continued encounter between Rogers and McCann must be either consensual or based on reasonable and articulable suspicion. See 284 Kan. at 775.

A consensual encounter between a citizen and law enforcement is not a seizure for the purposes of the Fourth Amendment. *Hanke*, 307 Kan. at 827.

> "When it is alleged an investigatory traffic stop has turned into a consensual encounter, potential issues arise regarding the legality of: (1) the initial stop, *i.e.*, whether the officer's action was justified at its inception; (2) the detention, *i.e.*, whether the length and scope of the detention were reasonably related in scope to the circumstances which justified the interference in the first place; and (3) the continuation of the encounter beyond the point in time when the purpose of the traffic stop was fulfilled, *i.e.*, whether the continuation was consensual or the officer gained a reasonable and articulable suspicion of illegal activity." *Thompson*, 284 Kan. at 773.

Rogers does not challenge the initial stop or the length of the initial detention. Even if he did, the stop was justified because Rogers was driving over the posted speed limit. During the initial detention, McCann did not question Rogers but ran his information and returned to the car to give Rogers a warning. Thus, our only concern is whether the continuation of the encounter was consensual.

Whether an encounter is consensual is a fact-driven question, with no exhaustive or exclusive list of factors. Some factors frequently used to make this determination include "knowledge of the right to refuse, a clear communication that the driver is free to terminate the encounter or refuse to answer questions, return of the driver's license and other documents, and a physical disengagement before further questioning." 284 Kan. at 811. Other factors indicating a "coercive environment" include the presence of several officers, the displaying of an officer's weapon, physically touching the person, using aggressive language or tone of voice indicating that compliance is mandatory, prolonging retention of the person's personal effects, requesting the person accompany the officer somewhere, interacting in a nonpublic place, or displaying a patrol car's emergency lights. 284 Kan. at 811.

In *State v. Parker*, 282 Kan. 584, 592-93, 147 P.3d 115 (2006), the Kansas Supreme Court found an encounter consensual when, after the officer pulled into a driveway behind Parker, Parker approached the officer's car before the officer could get out of his car or speak to Parker. Here, McCann returned Rogers' driver's license, told him he was free to go, and stepped back to walk to his patrol car. McCann did not use aggressive language or physically touch Rogers. The biggest factor in deciding if the continuation of the encounter was consensual was that, as McCann stepped back, it was Rogers who initiated a new conversation with McCann after the completion of the stop. At this point, the encounter was consensual.

Eventually Rogers asked if he could leave, and McCann refused his request, thus ending the consensual encounter and turning it into an investigatory detention. See *I.N.S v. Delgado*, 466 U.S. 210, 215, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984) (holding initially consensual encounter can transform into seizure or detention "'if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave'") (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 [1980]). To detain Rogers for an investigatory detention, McCann needed to have reasonable suspicion that Rogers committed a crime, was committing a crime, or was about to commit a crime. See *State v. Morris*, 276 Kan. 11, 17, 72 P.3d 570 (2003).

An officer can rely on his or her observations or the detainee's responses during a consensual encounter to develop reasonable suspicion for a stop. See *State v. Morlock*, 289 Kan. 980, 996, 218 P.3d 801 (2009). In *State v. MacDonald*, 253 Kan. 320, 322, 856 P.2d 116 (1993), an officer testified to smelling the odor of burned marijuana when he stopped MacDonald. The Kansas Supreme Court found the smell of marijuana sufficient to establish probable cause to further detain MacDonald because "[t]he odor created the needed particularized suspicion of criminal activity." 253 Kan. at 324. Additionally, an officer can form reasonable suspicion from the detainee's behavior that the detainee is under the influence if the officer can support this suspicion with "articulable and reasonable observations." See *Hanke*, 307 Kan. at 829.

The record does not reflect whether McCann smelled burned or raw marijuana, but the odor of either is sufficient for probable cause. See *State v. Kirk*, 40 Kan. App. 2d 817, 820, 196 P.3d 407 (2008). If McCann possessed probable cause based on the odor of marijuana, he also had reasonable suspicion to continue the stop. Although McCann had reasonable suspicion from the odor of marijuana alone, he testified to other indicators that led him to believe Rogers was under the influence of drugs or alcohol. Rogers was mumbling, and his speech was slow and occasionally stumbling. McCann noticed a

8

glassy look in Rogers' eyes, and Rogers' pupils were much larger than normally observed during a traffic stop. McCann testified that, in his training and experience, stumbling speech and large pupils are indicators of a person under the influence. McCann also believed Rogers had a higher level of nervousness than normally expressed by people during a regular traffic stop. When McCann asked Rogers if he had been drinking or smoking marijuana, Rogers' voice choked up when answering no. Based on these observations, McCann believed Rogers was under the influence of marijuana or alcohol and asked for consent to search Rogers' car. Rogers denied consent. McCann had reasonable suspicion to detain Rogers until a K-9 unit could perform a dog sniff on Rogers' car.

After being informed a dog would perform a drug sniff of his car, Rogers admitted to possessing marijuana and asked McCann if he could retrieve it for McCann. The threat of a dog sniff was not coercive because McCann had reasonable suspicion to request the dog sniff. See *State v. Toevs*, No. 100,065, 2008 WL 5401488, at *3-4 (Kan. App. 2008) (unpublished opinion) (finding that when officer has authority to detain driver, telling driver that dog may be brought to scene is not coercive). The seizure was not unreasonable.

B.    *Probable cause to search Rogers' car*

Under the automobile exception to the warrant requirement, officers may search a car without a warrant if the officers have probable cause. See *State v. Sanchez-Loredo*, 294 Kan. 50, 56, 272 P.3d 34 (2012) (quoting *Carroll v. United States*, 267 U.S. 132, 149, 45 S. Ct. 280, 69 L. Ed. 543 [1925]).

> "'Probable cause is the reasonable belief that a specific crime has been committed and
> that the defendant committed the crime. Probable cause exists where the facts and
> circumstances within the arresting officers' knowledge and of which they had reasonably

trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'" *State v. Ramirez*, 278 Kan. 402, 406, 100 P.3d 94 (2004).

Probable cause to search "'can be established if the totality of the circumstances indicates there is a fair probability that the place to be searched contains contraband or evidence of a crime.'" *State v. Regelman*, 309 Kan. 52, 61, 430 P.3d 946 (2018).

As discussed earlier, McCann's detection of the odor of marijuana was sufficient to establish probable cause. See *MacDonald*, 253 Kan. at 324. Additionally, Rogers admitted he had marijuana in his car and retrieved it from under the driver's seat. When asked if there was any more marijuana in the car, Rogers informed McCann there were empty plastic baggies in the car. Prior to the search of his person, Rogers admitted he had more marijuana on his body and pulled out a plastic wrapper from inside his pants. In light of the totality of the circumstances, McCann had probable cause to believe there was marijuana in Rogers' car because Rogers already revealed a baggie of marijuana and admitted to having additional empty baggies in the car.

There was nothing unlawful about Rogers' detention or search of his person or car. The district court did not err in refusing to suppress the evidence obtained. We affirm Rogers' convictions and sentence.

Affirmed.