NOT DESIGNATED FOR PUBLICATION

No. 120,160

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHARLES KUHNERT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed January 31, 2020. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., HILL and GARDNER, JJ.

PER CURIAM: While in his early 20s, Charles Kuhnert had sexual intercourse with A.S., who was under the age of 14. The police questioned Kuhnert about his relationship with A.S. In the interview, the detective told Kuhnert that he believed A.S. was a willing participant in the sexual intercourse. Kuhnert said that she was and detailed their relationship to the police.

A jury convicted Kuhnert of two counts of rape and one count of aggravated criminal sodomy. Kuhnert appeals arguing that the district court erred by not suppressing

1

his confession. Because the defendant must still object to the introduction of evidence at trial to preserve the issue for appeal, we find Kuhnert failed to preserve the issue for appeal. See *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016). But even if he had properly preserved the issue, the district court did not err in failing to suppress Kuhnert's confession.

Kuhnert also contends that the district court erred in denying his request for a durational departure at sentencing. Because we cannot say that no reasonable person would have ruled as the district court did, the district court's decision to deny a second departure was not an abuse of discretion. As a result, we affirm.

FACTUAL AND PROCEDURAL HISTORY

In October 2017, A.S., who was under the age of 14, told her mother (Mother), that Kuhnert had sexually touched her. Kuhnert sometimes lived with Mother and her family. After learning this, Mother and her husband called the police.

Detective Dan Ribble interviewed Kuhnert a few days later. The interview took place in an interview room at Ribble's office. Ribble informed Kuhnert that he was free to leave, and Ribble advised Kuhnert of his *Miranda* rights. Ribble recorded the interview.

During the interview, Detective Ribble told Kuhnert that he believed that A.S. and Kuhnert had sexual contact but that he thought it was consensual. After hearing this, Kuhnert agreed and said that he and A.S. had become sexually involved. According to Kuhnert, one night after everyone had gone to bed, A.S. came to Kuhnert and told him that she wanted to "make out." Kuhnert said that he went along with it, and eventually he and A.S. had sexual intercourse. Kuhnert said that at a later date, A.S. followed him into the bathroom and performed oral sex on him. Kuhnert also said that he digitally

penetrated A.S.'s vagina. After finishing the interview, Ribble placed Kuhnert under arrest.

The State charged Kuhnert with two counts of rape for engaging in sexual intercourse with a child under the age of 14 while Kuhnert was over the age of 18 and one count of aggravated criminal sodomy with a child under the age of 14 while Kuhnert was over the age of 18.

Before the trial, Kuhnert moved to have his interview with Detective Ribble suppressed. Kuhnert argued that his statements were involuntary because Ribble downplayed the importance of the interview. The district court denied Kuhnert's motion, finding that Kuhnert made his statements voluntarily. The district court admitted the recorded interview into evidence at trial without objection.

At trial, A.S. testified that while she was in sixth grade, Kuhnert came into her room late at night and inserted his penis into her vagina. According to A.S., this occurred twice. Kuhnert also digitally penetrated A.S. on three or four different occasions. A.S. also testified that Kuhnert put his penis in her mouth.

Kuhnert also testified at trial. Kuhnert acknowledged that he told the police that he had sex with A.S. But he said that he only did so because he did not want the police to believe he forcibly raped A.S. He explained that he thought he would be helping himself by admitting to having consensual sex with A.S. According to Kuhnert, he usually agreed with people to avoid conflict and resolve the situation. At trial, he denied any sexual encounter with A.S.

The jury found Kuhnert guilty on all charges. Because of the charges against him, Kuhnert faced a sentence of life imprisonment with a mandatory minimum term of 25 years on each count under the Jessica's Law sentencing scheme. Kuhnert moved to depart

3

to the sentencing grid and to further depart in the duration of his grid sentence. The district court granted a departure to the grid but denied Kuhnert's additional request to a durational departure from the grid guideline sentence. Instead, the court sentenced him to 165 months' imprisonment—the high grid number. Kuhnert timely appeals.

ANALYSIS

Kuhnert raises two arguments on appeal. First, he argues that the district court erred by finding that he voluntarily confessed and by refusing to suppress the interview. Second, he argues that the district court abused its discretion by not departing a second time in order to sentence him to a reduced term of imprisonment.

*Kuhnert did not properly preserve his objection to the introduction of his confession at trial.*

Kuhnert argues that his statement to Detective Ribble was not voluntary and that the confession was inadmissible at trial. The State argues Kuhnert failed to preserve the issue for appeal.

Generally, when the district court has denied a motion to suppress, the moving party must still object to the introduction of that evidence when the prosecutor offers it at trial to preserve the issue for appeal. *Dupree*, 304 Kan. at 62.

Kuhnert acknowledges that the district court admitted his confession into evidence at trial without objection. But he urges this court to consider the issue in order to serve the ends of justice or to prevent the denial of a fundamental right. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014) (allowing an appellant to raise an issue for the first time on appeal if consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights).

4

The Kansas Supreme Court addressed a similar issue in *State v. Potts*, 304 Kan. 687, 700-01, 374 P.3d 639 (2016), and refused to address the issue. In *Potts*, the State charged the defendant with felony murder, along with other crimes, as a result of his participation in a shooting. The police questioned Potts after informing him of his *Miranda* rights. Potts informed the police that he drove a vehicle while some of his passengers shot at another car, leading to a death.

Potts failed to object when the State offered his statement to police as evidence at trial. On appeal, he argued the court should address the suppression issue to serve the ends of justice or to prevent the denial of fundamental rights. The Kansas Supreme Court rejected Potts' argument, holding that declining to address the issue accorded with Kansas' requirement for a contemporaneous objection. 304 Kan. at 700-01; see K.S.A. 60-404 (requiring a "timely" objection).

Kuhnert offers nothing to support his argument that we should address his appeal on this issue. Instead, after acknowledging that he did not properly preserve his appeal he leaps straight into the merits of his claim. This court need not address the merits of Kuhnert's claim. He failed to object to the evidence at trial and fails to establish that consideration of the issue is necessary to serve the ends of justice and prevent the denial of his fundamental rights.

*Even if the issue was preserved, the district court did not err in denying Kuhnert's motion to suppress the confession.*

In the alternative, we find that even if Kuhnert had properly preserved the issue for appeal, his claim fails.

We use a dual standard when reviewing a decision ruling on a motion to suppress a confession. In reviewing a district court's ruling, the appellate court reviews the factual

underpinnings of the decision under a substantial competent evidence standard. We review the ultimate legal conclusion drawn from those facts de novo. The appellate court does not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. *State v. Dern*, 303 Kan. 384, 392, 362 P.3d 566 (2015).

If a confession is voluntary, the State may use the confession against the defendant. The State bears the burden of proving by a preponderance of the evidence that a confession was voluntary. *State v. Mattox*, 305 Kan. 1015, 1042, 390 P.3d 514 (2017).

> "'In a criminal proceeding as against the accused, a previous statement by the accused relative to the offense charged [is admissible], but only if the judge finds that the accused (1) when making the statement was conscious and was capable of understanding what the accused said and did and (2) was not induced to make the statement (A) under compulsion or by infliction or threats of infliction of suffering upon the accused or another, or by prolonged interrogation under such circumstances as to render the statement involuntary or (B) by threats or promises concerning action to be taken by a public official with reference to the crime, likely to cause the accused to make such a statement falsely, and made by a person whom the accused reasonably believed to have the power or authority to execute the same.'" *State v. Garcia*, 297 Kan. 182, 189, 301 P.3d 658 (2013) (quoting K.S.A. 2012 Supp. 60-460[f]).

The analysis of whether a confession was voluntary often begins with a determination of whether the defendant made his or her statements during a custodial interrogation and, if so, whether the police provided proper procedural safeguards—such as *Miranda* warnings. See *State v. Regelman*, 309 Kan. 52, 59, 430 P.3d 946 (2018). Kuhnert does not argue that he was improperly Mirandized, instead he argues that his statement was involuntary given the totality of the circumstances surrounding his confession.

When determining whether a confession was voluntary, courts consider the totality of the circumstances surrounding the confession and determine its voluntariness by considering the following nonexclusive factors: (1) the accused's mental condition; (2) the manner and duration of the interrogation; (3) the ability of the accused to communicate on request with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language. *State v. Woods*, 301 Kan. 852, 867, 348 P.3d 583 (2015).

> "'These factors are not to be weighed against one another with those favorable to a free and voluntary confession offsetting those tending to the contrary. Instead, the situation surrounding the giving of a confession may dissipate the import of an individual factor that might otherwise have a coercive effect. Even after analyzing such dilution, if any, a single factor or a combination of factors considered together may inevitably lead to a conclusion that under the totality of circumstances a suspect's will was overborne and the confession was not therefore a free and voluntary act.' [Citation omitted.]" *Mattox*, 305 Kan. at 1043.

The State bears the burden to prove the confession was voluntary. 305 Kan. at 1042.

Kuhnert argues that his age, intellect, and background, along with the fairness of the interview technique, rendered his confession involuntary. His argument is unpersuasive.

The district court found that Kuhnert was of sound mind during the interview. As the district court noted, the interview was not long and occurred during the middle of the day. Detective Ribble told Kuhnert that he was free to leave at any time, and Kuhnert was not handcuffed or otherwise restricted in his movement. Kuhnert was around 23 years old at the time of the interview. During sentencing, the district court found that Kuhnert did not have the same intellectual, emotional, or social maturity as that of his peers. But it

7

was not a situation in which Kuhnert did not understand what was happening. It was clear to the district court that he understood what the interview was about even if he did not fully understand the legal implications of what he was saying. But ignorance of the law is no excuse. *State v. Davisson*, 303 Kan. 1062, 1068, 370 P.3d 423 (2016).

As for the fairness of the interview, the district court found that the techniques used by Detective Ribble were not unduly coercive and did not impact the voluntariness of Kuhnert's statements. Kuhnert relies on the Kansas Supreme Court's decision in *State v. Stone*, 291 Kan. 13, 237 P.3d 1229 (2010), to support his argument that Ribble's interview created a coercive environment.

In *Stone*, the court held that the technique used by the police to interview the defendant, coupled with other factors present in the case, created an unduly coercive environment and that the court should have suppressed the confession. 291 Kan. at 32-33. The interviewer incorrectly, and repeatedly, told Stone that police had found his semen on the complaining witnesses pajamas, when in fact there was no confirmation that there was semen on the pajamas. The interviewer told Stone that she needed to get the truth from Stone and made it clear that she thought he was lying. The Kansas Supreme Court reasoned that

> "[t]he detective's repeated insistence that the truth could only be the version told by the victim, combined with her unequivocal statements that there was semen on the victim's pajamas and her belief that the DNA in it would match Stone's, followed by statements to the effect that only confessing could keep him out of jail or affect the length of his jail term made the circumstances unduly coercive." 291 Kan. at 29.

The situation here is not like that in *Stone*. After reviewing the recorded interview, it is clear there were no unduly coercive techniques used to manipulate Kuhnert into confessing. Detective Ribble made no promises, he did not repeatedly infer that Kuhnert was lying, nor did he make comments that were designed to suggest that a confession

8

could keep Kuhnert out of jail. Substantial competent evidence supports each of the district court's findings. See *Dern*, 303 Kan. at 392.

After considering the totality of the circumstances surrounding Kuhnert's confession, even if Kuhnert had properly preserved his objection to the introduction of the confession at trial, the district court did not err by refusing to suppress Kuhnert's confession. See 303 Kan. at 392.

*The district court did not err by failing to grant a second departure from the sentencing grid sentence.*

Because the jury convicted Kuhnert of a Jessica's Law crime—an off-grid felony—he was subject to lifetime imprisonment without possibility of parole for 25 years. Kuhnert moved for a departure to the Kansas Sentencing Guidelines Act sentencing grid, which was granted. He also moved for a second durational departure from the grid sentence. The district court denied the second departure. Kuhnert argues the district court abused its discretion by denying the second departure.

When reviewing a district court's decision of whether the mitigating circumstances warrant a departure sentence under Jessica's Law, the appellate court applies the abuse of discretion standard of review. *State v. Jolly*, 301 Kan. 313, 325, 342 P.3d 935 (2015) (*Jolly II*).

> "A district court abuses its discretion when:  (1) a ruling is based on an error of law; (2) a ruling is based on an error of fact, i.e., substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based; or (3) a ruling is arbitrary, fanciful, or unreasonable, i.e., no reasonable person would take the view adopted by the judge." *State v. Powell*, 308 Kan. 895, 902-03, 425 P.3d 309 (2018).

Sentencing under Jessica's Law, pursuant to K.S.A. 2018 Supp. 21-6627, generally provides for a life sentence with a mandatory minimum term of imprisonment. The statute, however, expressly authorizes and provides a procedure for imposing a departure sentence from the mandatory minimum sentence. See K.S.A. 2018 Supp. 21-6627(d). In evaluating a request for a departure sentence under Jessica's Law, the sentencing court must determine whether substantial and compelling reasons exist for a departure "'*following a review of mitigating circumstances*.'" *Jolly II*, 301 Kan. at 321.

Once the district court has departed from the Jessica's Law sentence to the sentencing grid, the court may grant another departure from the guideline sentence. To do so, the court must find "substantial and compelling reasons for the departure." K.S.A. 2018 Supp. 21-6815(a). The district court may use the mitigating factors relied on for the first departure to determine whether to depart from the guideline sentence. See *State v. Spencer*, 291 Kan. 796, 810, 248 P.3d 256 (2011). If the district court finds that a durational departure is appropriate, the court may not sentence the defendant to "less than 50% of the center of the range of the sentence for [any crime of extreme sexual violence]." K.S.A. 2018 Supp. 21-6818(a).

Kuhnert does not argue the district court erred as a matter of law or as a matter of fact, so this court is tasked with determining whether no reasonable person would have agreed with the district court's decision. See *State v. Florentin*, 297 Kan. 594, 599, 303 P.3d 263 (2013).

At sentencing, Kuhnert argued that the district court should depart from the off-grid sentence, and durationally depart from the sentencing grid sentence, because he had no criminal history, was immature for his age, had a low risk of reoffending, and his victim was a willing participant. (We pause to note that in 2019 the Legislature amended K.S.A. 21-6815[c][1][A] to disallow the sentencing court to consider the victim's participation in a sexually violent crime when the victim is less than 14 years old.) The

district court partially granted Kuhnert's motion to depart, noting that Kuhnert had no prior convictions, was emotionally immature for his age, and that A.S. was not the typical victim in Jessica's Law cases. Based on those mitigating circumstances, the court departed to the sentencing grid. Kuhnert argues that because the mitigating circumstances were sufficient to depart to the grid, it was unreasonable for the district court to find the circumstances insufficient to depart even more.

This court has addressed a similar argument in *State v. McCormick*, No. 117,976, 2018 WL 3194349, at *3-4 (Kan. App.) (unpublished opinion), *rev. denied* 309 Kan. 1352 (2018), where it held that mitigating factors warranting an initial departure do not necessarily justify a second departure. In *McCormick*, the defendant was convicted of rape and subject to a sentence under Jessica's Law. At sentencing, the district court granted McCormick a departure to the sentencing grid but denied his motion to further depart from the guideline sentence on the grid.

McCormick argued that if substantial and compelling reasons exist to depart from a Jessica's Law sentence to the sentencing grid, those same factors must support a further departure from the guideline sentence on the grid. This court disagreed. The court reasoned that such a requirement does not make sense given Kansas' statutory sentencing scheme. If the mitigating circumstances warranting a departure to the grid were automatically substantial and compelling reasons to further depart from the grid's guideline sentence there would be no reason to use a two-step process. See K.S.A. 2018 Supp. 21-6627(d); K.S.A. 2018 Supp. 21-6815(a); *State v. Jolly*, 291 Kan. 842, 847, 249 P.3d 421 (2011) (*Jolly I*) (holding a two-step process is required to depart from an off-grid sentence and to further depart from the grid guideline sentence). This reasoning is persuasive. After departing from a Jessica's Law sentence to the sentencing grid, the district court must separately consider whether substantial and compelling reasons exist to justify a further departure. The mitigating circumstances supporting a departure to the

11

grid may, but do not automatically, justify a further departure from the guideline sentence. See *McCormick*, 2018 WL 3194349, at *3.

Here, the district court considered the mitigating factors and determined that they justified a departure to the sentencing grid. The mitigating factors did not automatically require the district court to grant a second departure from the grid sentence. There was no error of law, no error of fact, and this court cannot say that no reasonable person would have ruled as the district court did. The district court's decision to deny a second departure was not an abuse of discretion. See *Powell*, 308 Kan. at 902-03.

Affirmed.